# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17-cv-03750 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| RICARDO ARROYO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner Ricardo Arroyo's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [1]. For the reasons stated below, Petitioner's Section 2255 petition [1] is denied. The Court declines to certify any issue for appeal pursuant to 28 U.S.C. § 2253(c)(2) and directs the Clerk to enter judgment in favor of the United States. Civil case terminated.

## I.     Background

Petitioner Ricardo Arroyo ("Petitioner") is currently serving a seventy-month sentence after pleading guilty to possession with intent to distribute in excess of 500 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). From approximately 2009 through October 2012, Petitioner assisted his father, Marcos Arroyo, in obtaining wholesale quantities of cocaine and heroin for multiple drug supplies and reselling drugs to multiple wholesale drug customers. Petitioner's activities in assisting his father included communicating and meeting with drug suppliers and customers, receiving and distributing drugs, and collecting and distributing drug proceeds. On April 25, 2013, Petitioner was charged (in this Court) with six violations of 21 U.S.C. § 841(a)(1), as well as a violation of 21 U.S.C. § 846. *U.S. v. Ricardo Arroyo*, Case No. 12-CR-821-4, Dkt.

77. The indictment also included a forfeiture allegation which sought, among other things, real estate—namely, a residence at 22820 Torrence Avenue, Sauk Village, Illinois, which Petitioner and his father had used for conducting drug transactions and for storing drugs and cash proceeds from the sales of drugs.

On August 26, 2015, Petitioner pled guilty, pursuant to a written plea agreement, to a violation of 21 U.S.C. § 841(a)(1) as charged in Count Nine of the second superseding indictment. Case No. 12-CR-821-4, Dkt. 235. In the plea agreement, Petitioner agreed that the amount of narcotics involved in the conspiracy and relevant conduct for which he was accountable was more than approximately 50 kilograms of cocaine but less than 150 kilograms of cocaine and no less than approximately 1200 grams of heroin. Petitioner also agreed to the applicable United States Sentencing Guidelines calculations, namely, that pursuant to USSG§§ 2D1.1(a)(5), 2D1.1(c)(3), 3E1.1(a), 3E1.1(b), 5Cl.2 and 2D1.1(b)(16), and his criminal history category of I, his anticipated advisory sentencing guidelines range was 108 to 135 months' imprisonment. *Id.* at 8-9. The plea agreement also states that Petitioner may be eligible for a three-level reduction in the offense level for acceptance of responsibility under USSG§§ 3E1.1(a) and (b) and an additional two-level "safety valve" reduction under § 2D1.1(b)(6). *Id.* Additionally, Petitioner agreed to the forfeiture of $292,500 and the real property located at 22820 Torrence Avenue, Sauk Village, Illinois, as proceeds obtained as a result of the offense and property which facilitated the offense. *Id.* at 12. Finally, Petitioner acknowledged that he had read the Agreement and carefully reviewed each provision with his attorney, and that he understood and voluntarily accepted each and every term and condition of the Agreement. *Id.* at 20.

That same day, Petitioner engaged in a plea colloquy with the Court. Case No. 12-CR-821-4, Dkt. 343. Under oath, Petitioner stated that he had had enough time to talk to his attorney

about the case and had told his attorney everything that he knew about the case. *Id.* at 6. He also said that he had read the indictment and discussed it with his attorney and he understood the charges against him. *Id.* at 7-8. He further told the Court that he had read the plea agreement and discussed it with his attorney before signing it. *Id.* at 13. Regarding drug quantities, Petitioner admitted, by agreeing with the government's summary of its evidence, that the amount of narcotics involved in the conspiracy and relevant conduct for which he was accountable was more than approximately 50 kilograms of cocaine, but less than 150 kilograms of cocaine, and no less than approximately 1200 grams of heroin. *Id.* at 23-24.

During the plea hearing, the government described its preliminary sentencing calculation as follows: the Base Offense Level begins at 34, because the offense involved more than 50 kilograms but less than 50 kilograms of cocaine and no less than approximately 1200 grams of heroin; a three-point reduction for acceptance of responsibility; and, if the Court agrees at the time of sentencing, a two-level "safety valve" reduction that would allow the Court to sentence Petitioner without regard to the statutory minimum. *Id*. at 14-15. Before the safety-valve reduction, the advisory guideline range would be 108 to 135 months, and with the safety-valve reduction, it would be 87-108 months. *Id.* at 15-16. Petitioner's counsel stated that he agreed with the government's calculations and had explained them to Petitioner, and when asked if he had any questions either for the Court or his attorney, Petitioner responded "No." *Id.* at 16-17. The Court also informed Petitioner that before sentencing, the parties could "put in any additions or corrections they have to the Presentence Report, and any further position they want to take in regard to the sentencing guidelines, including the safety valve." *Id.* at 17.

The presentence investigative report ("PSR") mirrored the government's preliminary sentencing calculation. Case No. 12-CR-821-4, Dkt. 239 at 6-7. It stated that the base offense

3

level was 34 and the offense level was decreased by three for Petitioner's acceptance of responsibility. *Id.* It also noted that Petitioner met the requirements for a two-level safety valve reduction. *Id.* Given a criminal history category of I and a total offense level of 29, which includes the safety-valve reduction, the PSR calculated an advisory guidelines range of 87-108 months. *Id.* at 17. In response to the PSR, Petitioner's sentencing memorandum did not challenge the advisory guidelines calculations, but argued for a lenient sentence pursuant to the factors of 18 U.S.C. § 3553. Case No. 12-CR-821-4, Dkt. 243.

At a March 22, 2016 sentencing hearing, the Court adopted the guidelines calculations set forth in the PSR and sentenced Petitioner to a below-the-range sentence of seventy months' imprisonment. Case No. 12-CR-821-4, Dkt. 278, 280. The Court also granted the government's preliminary order of forfeiture, seeking to forfeit a personal money judgment in the amount of $292,500, and the property located at 22820 Torrence Avenue, Sauk Village, Illinois. Petitioner did not object to or challenge the motion. On August 17, 2016, the government moved for a final order of forfeiture, which was granted on September 1, 2016. Case No. 12-CR-821-4, Dkt. 299, 301, 302.

On May 9, 2017, Petitioner filed the instant *habeas* petition [1]. He alleges that his conviction and sentence should be vacated because his attorney was ineffective. Specifically, he claims that defense counsel made two errors. First, Petitioner alleges that before he entered a guilty plea, defense counsel incorrectly said that Petitioner could challenge guideline calculations regarding drug quantity after pleading guilty and before sentencing. *Id.* at 4. Second, Petitioner says that defense counsel led him to believe that forfeiture of his real property would be negotiable after a guilty plea, instead of informing Petitioner that a guilty plea would lead directly to a

forfeiture of his real property. *Id*. Petitioner asserts that if his counsel had advised him correctly, he would not have entered the guilty plea that he did. *Id.*

Petitioner did not file a memorandum or affidavit support of his claims, but the petition stated that he would supplement the filing with a memorandum and affidavit. *Id.* at 13. The Court gave Petitioner and his counsel several chances to file a supplemental memorandum, but none has been filed. See [4], [10], [11], [12], and [15].

## II. Legal Standard

Petitioner seeks *habeas* relief under Section 2255. The Seventh Circuit has stressed that "relief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Under § 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255). A Section 2255 motion is not a substitute for a direct criminal appeal. See *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) (stating that a § 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal" (internal citation and quotation marks omitted)).

Petitioner argues that he received ineffective assistance of counsel in violation of the Sixth Amendment because defense counsel: (1) incorrectly told Petitioner that he would be permitted to challenge guideline calculations regarding drug quantity after pleading guilty and before sentencing; and (2) led Petitioner to believe that forfeiture of his real property would be negotiable after a guilty plea, instead of informing Petitioner that a guilty plea would lead directly to a

5

forfeiture of his real property. Petitioner asserts that if his counsel had advised him correctly, he would not have entered the guilty plea that he did.

To prevail on such a claim, Petitioner must meet the familiar two-pronged "performance" and "prejudice" test set forth in *Strickland v. Washington*, establishing that (1) his lawyer's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that the result of the proceedings would have been different, but for his counsel's "unprofessional errors." 466 U.S. 688, 694 (1984); see also *Ward v. Jenkins*, 613 F.3d 692, 698 (7th Cir. 2010). Both components of the test must be satisfied, or the claim must be denied; "the lack of either is fatal." *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996).

Regarding the performance prong, a court must consider "all of the circumstances of [the] case" in determining whether counsel's acts or omissions "were made outside the wide range of professionally competent assistance." *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000) (citing *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995)). "When the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight" such that "[i]t is no surprise that such claims almost always fail." *United States v. Taglia*, 922 F.2d 413, 417–18 (7th Cir. 1991); see also *Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").

Regarding the prejudice prong, if a court finds an attorney's representation to be unconstitutionally deficient, it must then decide whether there is "a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceedings would have been different." *Allen v. Chandler*, 555 F.3d 596, 600 (citing *Strickland*, 466 U.S. at 690). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; see also *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, "[c]ounsel's errors must have been 'so serious as to deprive the defendant of a fair trial.'" *Carter v. Butts*, 760 F.3d 631, 635 (7th Cir. 2014) (quoting *Strickland*, 466 U.S. at 693). Petitioner must satisfy both prongs of the test in order to meet his burden, and a finding against him on either prong may end the inquiry. *Id*. at 697.

Review of a trial attorney's performance is "highly deferential," and a district court's analysis must begin with a "strong presumption" that the defendant's attorney provided adequate representation to his client. *United States v. Meyer*, 234 F.3d 319, 324–25 (7th Cir. 2000). Petitioner must show that his counsel made "errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

### III. Analysis

#### A. Waiver

In general, arguments are waived when they are perfunctory, underdeveloped, or legally unsupported. *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."); *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We have repeatedly warned that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)"); *Beard v. Whitley Cty. REMC*, 840 F.2d 405, 408–09 (7th Cir. 1988)

7

("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (citation omitted); *United States v. Brown*, 899 F.2d 677, 679 n.1 (7th Cir. 1990); *United States v. Bitterman*, 320 F.3d 723, 727 (7th Cir. 2003) ("We will not entertain [defendant's] half-hearted and conclusory argument, as it lacks legal or factual support of any kind.").

Petitioner's arguments are so unsubstantiated that they are waived. The assertions in the petition consist of a mere seven sentences, with no citations to the record or legal authority and no memorandum or affidavit to support or expand on them. [1] at 4. Petitioner declined to submit a supporting memorandum and affidavit, despite numerous chances from the Court. The Section 2255 petition amounts to little more than conclusory allegations. Therefore, the Court finds that Petitioner has waived his arguments, which provides a sufficient basis to deny the relief sought in the petition. *cf. United States v. Irons*, 712 F.3d 1185, 1190 (7th Cir. 2013) (rejecting an "underdeveloped argument" in a postconviction motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2)), overruled on other grounds by *United States v. Taylor*, 778 F.3d 667 (7th Cir. 2015); *Kindle v. United States*, WL 3478086, at *2 (N.D. Ill. May 29, 2015) (denying Section 2255 petition and noting that two of the petitioner's arguments lacked merit because they were only "three conclusory sentences" in the petition and "neither was developed in [petitioner's] supporting memorandum.").

### B.     Trial Counsel's Advice Concerning Plea and Sentencing

Even if Petitioner had not waived his arguments, the record would not allow him to meet his burden under *Strickland*. Petitioner seems to challenge his counsel's performance during the plea bargaining stage; he claims that counsel gave him incorrect and incomplete information before he entered his guilty plea and insists that if counsel had given him accurate advice, he would not

have entered the guilty plea that he did. [1] at 4. However, Petitioner has not shown that either (1) his lawyer's performance fell below an objective standard of reasonableness, or (2) there is a reasonable probability that the result of the proceedings would have been different, but for his counsel's "unprofessional errors." *Strickland*, 466 U.S. at 694.

　　1.　　*The Performance Prong*

First, Petitioner has not established that trial counsel in fact made the errors that Petitioner asserts, much less that those alleged errors fell below an objective standard of reasonableness. The record before the Court directly contradicts the claims in the petition, and Petitioner offers no additional evidence from which the Court could conclude that counsel's performance at the plea bargaining stage was ineffective.

First, Petitioner claims that trial counsel incorrectly said he would be able to challenge the guideline calculations regarding drug quantity after entering a guilty plea, and that at sentencing Petitioner "learned that he had already agreed to the guidelines" and could not challenge the guideline calculations. The record refutes the claim that Petitioner "learned" at sentencing that he had agreed to the guideline calculations; the evidence before the Court shows that Petitioner agreed to and knew he was agreeing to the calculations when he entered his guilty plea.

The plea agreement states, "The amount of controlled substances involved in the offense of conviction and relevant conduct for which defendant is accountable is more than 50 kilograms of cocaine but less than 150 kilograms of cocaine and no less than approximately 1200 grams of heroin." Case No. 12-CR-821-4, Dkt. 235 at 8. Furthermore, the "Factual Basis" section contains the following admission regarding the quantity of drugs: "RICARDO ARROYO acknowledges that the amount of narcotics involved in the conspiracy and relevant conduct for which he is accountable is more than approximately 50 kilograms of cocaine but less than 150 kilograms of

cocaine and no less than approximately 150 kilograms of cocaine and no less than approximately 1200 grams of heroin." *Id.* at 6. The plea agreement also lays out the offense level calculations, specifically, that pursuant to USSG§§ 2D1.1(a)(5), 2D1.1(c)(3), 3E1.1(a), 3E1.1(b), 5Cl.2, and 2D1.1(b)(16), and his criminal history category of I, Petitioner's anticipated advisory sentencing guidelines range was 108 to 135 months' imprisonment. *Id.* at 8.

Furthermore, the plea colloquy demonstrates that Petitioner knew that he was agreeing to the guidelines calculations regarding drug quantity. During the colloquy, the Government laid out its calculations to Petitioner and the Court. Specifically, the government calculated that Petitioner's base offense level began at 34, because the offense involved more than 50 kilograms of cocaine but less than 150 kilograms of cocaine and no less than approximately 1200 grams of heroin. Case No. 12-CR-821-4, Dkt. 343 at 15. With a three-point reduction for acceptance of responsibility, and, if it applied, a further two-level reduction for the "safety valve," the total offense level would be 29, or an advisory guideline range of 87 to 108 months. *Id.* at 15-16. Petitioners' attorney said he had explained the guidelines calculations, which with he agreed, to Petitioner. *Id.* at 17. Petitioner said that he did not have any questions about the guidelines calculations either for the Court or for his attorney. *Id.* at 17.

Similar, although Petitioner claims counsel led him to believe that forfeiture of his real property would be negotiable after a guilty plea, both the plea agreement and the colloquy demonstrate that Petitioner knew the real property located at 22820 Torrence Avenue, Sauk Village, Illinois would be forfeited as a result of his plea. The plea agreement states, "Defendant agrees to forfeiture of the following specific property to the United States: $292,500, and against the real property located at 22820 Torrence Avenue, Sauk Village, Illinois…. Defendant consents to the immediate entry of a preliminary order of forfeiture as to this specific property, thereby

10

extinguishing any right title, or interest defendant has in it. If any of the specific property is not yet in the custody of the United States, defendant agrees to seizure of that property…". Case No. 12-CR-821-4, Dkt. 235 at 12. The agreement also contains a provision waiving "all constitutional, statutory, and equitable challenges in any manner…to any forfeiture carried out in accordance with this agreement on any grounds…" *Id*. at 12. Furthermore, at colloquy the government stated that the plea agreement contained a forfeiture provision that applied to the real property located at 22820 Torrence Avenue in Sauk Village, Illinois. *Id.* at 14. Petitioner raised no objections and did not stop the proceeding to consult with his attorney, despite the court instructing him that he was free to do so. Case No. 12-CR-821-4, Dkt. 343 at 3.

Petitioner also acknowledged that he read the Agreement, carefully reviewed each provision with his attorney, and he understood and voluntarily accepted each and every term and condition of the Agreement. Case No. 12-CR-821-4, Dkt. 235 at 4 and Dkt. 343 at 13. He said that he had had enough time to speak with his attorney about the case and told his attorney everything he knew about the case. Case No. 12-CR-821-4, Dkt. 343 at 6. Petitioner also stated that he had not been forced or threatened to induce him to plead guilty, no promises had been made to him in order to make him plead guilty. *Id.* Petitioner does not explain how he could have read the agreement, discussed it with his attorney, agreed that he understood it, but now claim that he did not understand it.

Petitioner offers no facts supporting his claim that defense counsel actually made the errors that Petitioner alleges. Nor has Petitioner made any showing that, if defense counsel did make those errors, his conduct fell below an objective standard of reasonableness. In fact, the record before the Court, including the plea agreement and colloquy, strongly contradict Petitioner's assertions and suggest that he did understand that he was agreeing to the guideline calculations to

be used in his sentencing and did understand that pleading guilty would result in forfeiture of his real property. Given that a defendant "is normally bound by the representations he makes to a court during the [change of plea] colloquy," *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2011), and that his assertion of ineffective assistance of counsel is otherwise unsupported, the Court has no basis on which to conclude that Petitioner's counsel offered substandard representation. See *United States v. Standiford*, 148 F.3d 864, 869 (7th Cir. 1998) (concluding that ineffective assistance of counsel claim regarding negotiation of plea failed in light of defendant's responses during Rule 11 colloquy and defendant's "self-serving assertions"). Petitioner fails the "performance" prong of the *Strickland* test.

2. *The Prejudice Prong*

Even if Petitioner had made the required showing regarding counsel's performance, the petition would still fail, because Petitioner has not demonstrated prejudice. The prejudice element is established in the plea bargaining context by showing a reasonable probability that but for counsel's errors, the defendant "would not have pleaded guilty and would have insisted on going to trial." *United States v. Parker*, 609 F.3d 891, 894 (7th Cir. 2010) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). In the context of plea agreements, the prejudice prong focuses on whether the deficient information was the decisive factor in a defendant's decision to plead guilty or to proceed to trial. *Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007) (citing *Hill*, 474 U.S. at 58-59). To make this showing, the petitioner must provide objective evidence that he would not have pleaded guilty; merely alleging that he would have insisted on going to trial in inadequate. *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (internal quotation and citation omitted).

Petitioner does not present any objective evidence that, had his understanding of the plea agreement been different, he would have insisted on a trial. In fact, Petitioner does not even claim

12

that he would have insisted on a trial. The wording of Petitioner's motion—"If he had been correctly advised, Petitioner would not have entered the guilty plea that he did"[1]—suggests that Petitioner still would have sought a plea agreement, just one with different terms. Furthermore, even if the petition had asserted that Petitioner would have insisted on a trial, his mere say-so would not be enough to demonstrate prejudice. *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009) (The Seventh Circuit "has repeatedly emphasized that a defendant's mere allegation that he would have chosen a path other than the conditional plea is insufficient by itself to establish prejudice.") Because Petitioner does not present objective evidence that, but for counsel's errors, he would have insisted on a trial Petitioner has not shown prejudice under *Strickland*.

### C. Evidentiary Hearing

A district court must grant an evidentiary hearing in a § 2255 case if the petitioner "alleges facts that, if proven, would entitle him to relief." *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015) (citation and internal quotation marks omitted). To meet this burden, a petitioner must submit a detailed and specific sworn affidavit providing facts supporting the petitioner's assertion that he is entitled to relief. *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006). The purpose of requiring a detailed and specific affidavit is to "ensure that a petitioner can provide some evidence beyond conclusory and speculative allegations, even if that evidence is his verified statement alone." *Id.* at 1068. The affidavit is a threshold requirement, and "its absence precludes the necessity of a hearing." *Id.* (citing *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir.2002)). Additionally, courts may "deny an evidentiary hearing where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Torzala v.* 545 F.3d

---

[1] The Court also notes that this statement was not even made under oath. The verification section lacks the movant's signature and states instead, "Signed by counsel for movant—will supplement with memorandum and affidavit from the movant." [1] at 14. As described above, Petitioner and his counsel never filed any such memorandum or affidavit.

at 525; 28 U.S.C. § 2255(b); *Perrone v. United States*, 889 F.3d 898, 910 (7th Cir.), cert. denied, 139 S. Ct. 654 (2018) ("When the record before the district court allows it to resolve the petition without such a hearing, the petitioner is not entitled to one.") Federal prisoners do not have an automatic right to an evidentiary hearing under 28 U.S.C. § 2255, and "a court may deny an evidentiary hearing if the allegations in the motion are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court." *Rodriguez v. United States*, 286 F.3d 972, 986 (7th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (May 21, 2002) (internal citation and quotation marks omitted).

Here, Petitioner has failed the threshold requirement of submitting a sworn affidavit. The court may decline to hold an evidentiary hearing on that ground alone. *Kafo*, 467 F.3d at 1067. Furthermore, the few allegations in the petition are unsubstantiated and directly contradicted by the record in Petitioner's criminal case. A hearing would not aid the Court in ruling on the petition, so the petition is denied without a hearing. See *Rodriguez*, 286 F.3d at 986–87 (affirming dismissal without hearing when it "would not have aided the district court in ruling on [petitioner's] § 2255 motion").

### D. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A *habeas* petitioner does not have an absolute right to appeal a district court's denial of his *habeas* petition; instead, he must first request a certificate of appealability. See *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009).

A *habeas* petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El*, 537 U.S. at 336; *Evans v. Circuit Court of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that reasonable jurists would find the Court's assessment of his § 2255 claims debatable or wrong. *Miller-El*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In view of the analysis set forth above, the Court concludes that Petitioner has not made a substantial showing that reasonable jurists would differ on the merits of his claims. Thus, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 253(c)(2).

### III. Conclusion

For the reasons stated above, Petitioner's motion is denied. The Court declines to certify any issue for appeal pursuant to 28 U.S.C. § 2253(c)(2) and directs the Clerk to enter judgment in favor of the United States. Civil case terminated.

Dated: June 18, 2019

                                            Robert M. Dow, Jr.
                                            United States District Judge